UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61146-CIV-LENARD/TURNOFF

**ANIL VINAYAK KOTE,**

    Plaintiff,

vs.

**PRINCESS CRUISE LINES, LTD.,**

    Defendant.
_____/

<u>**ORDER GRANTING DEFENDANT PRINCESS CRUISE LINES, LTD.'S
MOTION TO COMPEL ARBITRATION (D.E. 8) AND STAYING THIS CASE**</u>

    **THIS CAUSE** is before the Court on Defendant Princess Cruise Lines, Ltd.'s Motion to Compel Arbitration (D.E. 8), filed on September 14, 2010. Plaintiff Anil Vinayak Kote filed his Response in Opposition to the Motion (D.E. 19) on November 3, 2010, to which Defendant replied (D.E. 20) on November 15, 2010. Defendant also filed a Notice of Supplemental Authority (D.E. 34) on August 31, 2011. Having reviewed the Motion, the Response, Reply, the Notice of Supplemental Authority and the record, the Court finds as follows:

**I.**    **Factual and Procedural Background**

    This action involves injuries sustained by Plaintiff Anil Vinayak Kote while in Defendant Princess Cruise Lines, Ltd.'s employ. Kote, a citizen of India, filed suit in this

Court on July 5, 2010, alleging claims for Jones Act Negligence (Count I), Maintenance and Cure (Counts II-III).[1]  (*See generally*, Complaint, D.E. 1)

On or about July 28, 2009, Kote was working for Defendant aboard the Ruby Princess as a junior waiter.  (*Id.* ¶ 13.)  On that date, his supervisor assigned him to assist in the cleaning of a box of dirty knives.  (*Id.* ¶ 14.)  While lifting the box with another employee, Kote bore the brunt of the box's great weight.  (*Id.*) Fearing the box would fall and crush his feet, he maintained his end of the load long enough to get his feet out of the way.  (*Id.*) Doing so, however, caused injury to Kote's lower back.  (*Id.*)

Kote reported his injury to his supervisor immediately and requested to be seen by a doctor.  (*Id.* ¶ 15.)  After initially refusing, his supervisor relented when Kote's pain intensified.  (*Id.*)  The supervisor reported Kote's ailment as the flu, which required him to wait another two and one-half hours for treatment.  (*Id.* ¶¶ 16-17.)  The ships' doctor then diagnosed Kote's injury as a sprain, gave him the night off and sent him back to work with pain killers and ointment.  (*Id.* ¶ 18.)  Kote continued to work in pain until he signed off the ship on November 10, 2009.  (*Id.* ¶ 19.)

An MRI was performed on Kote on November 26, 2009, revealing "a posterior central and right paracentral annular tear with herniation at L4-L5 indenting the thecal sac and transferring nerve roots and a posterior central disc herniation at L5-S1 indenting both transversing nerve roots."  (*Id.* ¶ 21.) Kote saw two doctors who initially prescribed therapy, but this was unsuccessful.  (*Id.* ¶ 22.)  Kote then saw a third doctor who prescribed medicine

---

[1] The Complaint mistakenly contains two Count IIs.

and rest. (*Id.*) Kote's pain did not abate so he returned to the first doctor who recommended spinal surgery. (*Id.*) He does not further specify the dates of his treatment nor whether he elected to have the surgery.

Defendant is a Bermuda corporation and its ship, the Ruby Princess, is flagged in Bermuda as well. Prior to beginning his employment with Defendant, Kote signed a contract which contained an arbitration provision and incorporated a separate terms & conditions of employment pamphlet. (*See* Ex. A, Mot. to Dismiss, D.E. 8-1.) The terms & conditions also included arbitration, venue and choice of law provisions. (*See* Ex. B, Mot. to Dismiss at 13-14, D.E. 8-2.) Article 14 of the terms & conditions provides that any disputes arising out of Kote's employment would be subject to binding arbitration, held in Bermuda and subject to Bermuda law. (*See id.*)

Defendant now moves to compel arbitration, arguing that Kote's claims, arising during and out of his employment on the Ruby Princess, are governed by a mandatory arbitration provision. Defendants argue that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 9 U.S.C. ?? 202-208 ("Convention Act") requires that the arbitration provision be enforced once four jurisdictional elements are met. (Mot. at 6-8, citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1294, n.7 (11th Cir. 2005).) Defendant contends that all of the elements have been met in this case and therefore dismissal of the action in favor of arbitration is required. (*Id.* at 8.) As an additional measure, Defendant waives the exclusive application of Bermuda law and stipulates to the application of United States law to Kote's Jones Act claims at arbitration. (*Id.* at 12.)

Plaintiff opposes Defendant's Motion on several grounds: that the arbitration clause is "null and void" as unconscionable and the product of unequal bargaining power between Kote and Defendant; that Defendant's stipulation to waive application of Bermuda law is a unilateral contract modification and cannot remedy the employment contract's deficiencies; any arbitration award could not be enforced as illegal; an arbitration clause is a type of forum selection clause that is unenforceable under recent amendments to the Jones Act; the Jones Act's availability of punitive damages for maintenance and cure claims are prohibited by Kote's employment contract; and arbitration will be prohibitively expensive for Kote. (*See generally*, Resp.)

## II.     Standard of Review

Federal law strongly favors agreements to arbitrate, especially in international commercial transactions. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974); *Del Orbe v. Royal Carribean Cruises, LTD.*, 549 F. Supp. 2d 1365, 1368 (S.D. Fla. 2008) (Gold, J.). In deciding a motion to compel under the Convention Act, the district court conducts a "very limited inquiry." *Bautista*, 396 F.3d at 1294. Four jurisdictional prerequisites must be met prior to compelling arbitration:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Id.* at 1294, n.7. If the four prerequisites are satisfied, the court must compel arbitration

unless one the Convention Act's affirmative defenses applies. *Bautista,* 396 F.3d at 1302.

### III. Discussion

#### A. Jurisdictional Prerequisites

The parties do not dispute that *Bautista*'s four jurisdictional pre-requisites are met and the Court, upon review of the record, finds the same.

#### B. None of the Convention's Affirmative Defenses Are Applicable

Having found that the jurisdictional prerequisites have been met, the Court must compel arbitration unless one of the Convention's affirmative defenses applies.

In a recent opinion, *Lindo v. NCL (Bahamas) Ltd.*, the Eleventh Circuit reaffirmed the strong presumption in favor of arbitration and the notion that U.S. statutory claims, including Jones Act claims, are arbitrable "absent a contrary intention clearly and specifically expressed by Congress." 2011 U.S.App. LEXIS 18001, at **48-49 (11th Cir., Aug. 29, 2011). *Lindo* also clarified the applicability of certain affirmative defenses to the parties' arbitration provision in the context of Jones Act claims. *Id*. at **50-54. Distinguishing between Article II (arbitration-enforcement stage) and Article V (award-enforcement), the *Lindo* Court emphasized that the former's defenses are limited specifically to where the "[arbitration] agreement is *null and void, inoperative or incapable of being performed.*" *Id*. at **50-51 (emphasis in original) (citing New York Convention, art. II(3).

The "null and void" defense applies only where the agreement is obtained through "fraud, mistake, duress, and waiver," or the "standard breach-of-contract defenses."

*Lindo,* 2011 U.S.App. LEXIS 18001, at \*\*50-51 (citing *Bautista*, 396 F.3d at 1302). Here, Kote does not invoke any of these defenses. Thus, his "null and void" defense fails under Article II. *See id.* (Likewise denying plaintiff's Article II "null and void" defense in the absence of showing of fraud, mistake, duress or waiver).

Kote's claim that his employment contract was the product of unequal bargaining power, *i.e.* take it or leave it, or unconscionable, similarly fails. *Bautista* rejected this argument, "concluding that an unconscionability defense was not available under Article II of the Convention." *Lindo*, 2011 U.S.App. LEXIS 18001, at \*51, (citing *Bautista*, 396 F.3d at 1302 ("It is doubtful that there exists a precise, universal definition of the unequal bargaining power defense that may be applied effectively across the range of countries that are parties to the Convention, and absent any indication to the contrary, we decline to formulate one.")). Kote offers no persuasive authority or compelling facts on which this Court might find such a defense applicable here.

Indeed, the Eleventh Circuit makes clear that the range of Article II defenses is slim and not to be conflated with Article V defenses to the enforcement of an award. *Lindo*, 2011 U.S.App.LEXIS 18001, at \*\* 51, 55. *Lindo* criticizes the Court's prior opinion in *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009), upon which Kote relies heavily, in that it applies the Article V public policy defense in an Article II setting. 2011 U.S.App.LEXIS 18001, at \*\* 55-56. *Thomas* failed to follow *Bautista* when it created "a new public policy defense under Article II – based on the elimination of a U.S. statutory claim under the Seaman's Wage Act – [which] by definition [could not] be

6

applied 'neutrally on an international scale,' as each nation operates under different statutory laws and pursues different policy concerns." *Id*. at *56. Kote's public policy argument and reliance on *Thomas* is therefore outweighed by *Lindo*'s re-framing of the public policy analysis.

Furthermore, Kote's Article V public policy defense is premature at this stage. (*See* Resp. at 8.) Kote does make any showing regarding the (in)ability of Bermuda law to settle his Jones Act claims; he also does not explain how an arbitration in Bermuda applying U.S. law (to which Defendants stipulate) would result in fundamental unfairness. *See, e.g., Lindo*, 2011 U.S.App.LEXIS 18001, at **75-76. Even so, an Article V public policy defense would be timely only at the award enforcement stage at which time the record "will show what legal principles were applied and what [plaintiff]] recovered, or did not recover, and why." *Id*. at *77; *see also Vimar, Vimar Seguros Y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 540-41 (1995).

Finally, Kote's additional reasons why arbitration should not be compelled – the financial burden of arbitration in Bermuda and the arbitration clause's prohibition of punitive damages – do not fall within the accepted Article II defenses. *See Lindo*, 2011 U.S.App.LEXIS 18001, at **50-51; *Bautista*, 396 F.2d at 1302; *cf. Thomas*, 573 F.3d at ___. Even if financial hardship were recognized under the Convention as a defense, Kote, as the party seeking to invalidate arbitration, bears the burden of showing the likelihood of incurring these costs. *See Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92 (2000). Unsupported allegations will not carry this burden.

### C. This Case Would Be Compelled To Arbitration Under *Thomas*.

The Court is careful to note that *Lindo*, as a panel opinion, does not overrule the Circuit's 2009 decision, *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009), although the Court does find Lindo more persuasive.

This case would be compelled to arbitration consistent with this Court's application of *Thomas*, *Bautista* and their progeny. *See, e.g, Shaw v. Carnival Cruise Lines*, 2011 U.S. Dist. LEXIS 58704 (S.D. Fla. May 31, 2011); *Hiotakis v. Celebrity Cruises, Inc.*, 2011 U.S. Dist. LEXIS 58396 (S.D. Fla. May 31, 2011); *Martinez v. Carnival Corp.*, 2011 U.S. Dist. LEXIS 22904 (S.D. Fla. Mar. 8, 2011). In *Shaw*, *Hiotakis* and *Martinez*, the Court stated that simply uttering the name *Thomas* does not invoke the public policy defense; plaintiffs must show how the laws of the country where arbitration would be conducted did not recognize Jones Act claims or comparable remedies. In *Shaw* and *Hiotakis*, this Court found that defendants waived the application of foreign law to plaintiffs' Jones Act claims and stipulated for the review of the arbitral award by this Court. The Court also found that severing the unenforceable choice of law provisions while leaving intact the arbitration provision was consistent with contract principles. Arbitration was compelled in each of these cases and the instant case presents similar circumstances. Thus, in the absence of the *Lindo* decision, the Court would nevertheless compel arbitration.

Considering the strong presumption in favor of arbitration clause enforcement, the lack of specific exclusion by Congress of Jones Act claims from arbitration, Kote's lack

of applicable Article II defenses to arbitration enforcement, and the Court's prior application of *Thomas* and *Bautista* to circumstances similar to the case at hand, the Court must compel this dispute to arbitration pursuant to the Convention Act.

### D.     Conclusion

Accordingly, it is **ORDERED AND AJDUGDED** that:

1. Defendant Princess Cruise Lines, Ltd.'s Motion to Compel Arbitration (D.E. 8), filed on September 14, 2010, is **GRANTED**.

2. This Case is **STAYED** pending the outcome of arbitration and **ADMINISTRATIVELY CLOSED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of September, 2011.

*[signature]*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**